UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CELIA WEINBERG ASBERRY

VERSUS

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION

CIVIL ACTION

NUMBER 11-715-SDD-SCR

**NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, June 3, 2013.

/s/ Stephen C. Riedlinger
STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CELIA WEINBERG ASBERRY

VERSUS

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION

CIVIL ACTION

NUMBER 11-715-SDD-SCR

**MAGISTRATE JUDGE'S REPORT**

Plaintiff Celia Weinberg Asberry brought this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of Michael J. Astrue, the Commissioner of Social Security ("Commissioner") that denied her claim for disability insurance benefits.

For the reasons which follow the Commissioner's decision should be affirmed.

**Background**

Plaintiff Celia Weinberg Asberry was 57 years of age at the time of the administrative hearing.  AR pp. 28, 137.[1]  Plaintiff graduated from high school and obtained a college degree.[2]  AR pp. 28, 116.  Before the alleged onset of her disability in December of

---

[1] Under the regulations the plaintiff's age placed her in the category of "person of advanced age."  20 C.F.R. § 404.1563(c).

[2] Under the regulations the plaintiff's educational level was high school and above.  20 C.F.R. § 404.1564(b)(4).

2008, the plaintiff worked as a retail store manager, and held several different managerial positions with a fast food restaurant from 2000 to 2007. AR pp. 30-35, 91, 107, 111-12, 119-24.

In her June 2009 applications for disability benefits the plaintiff alleged that she is disabled as of December 2008 due to the following conditions - back problems, arthritis, thyroid problems, depression and bi-polar disorder. AR pp. 91-94, 107-116. Plaintiff's application was initially denied and the plaintiff requested a hearing before an administrative law judge ("ALJ"). An ALJ hearing was held on May 5, 2010 and the ALJ issued an unfavorable decision on October 29, 2010. At the fourth step of the disability analysis, the ALJ found that the plaintiff had a residual functional capacity ("RFC"), which left her able to perform her past relevant work as a retail store manager as it was actually performed and generally performed in the national economy. AR p. 18.

Plaintiff requested review of the ALJ's decision by the Appeals Council. When the Appeals Council denied the plaintiff's request for review on September 9, 2011, and the ALJ's findings became the final decision of the Commissioner. AR pp. 1-3, 7-19, 24-66. Plaintiff then filed this petition for judicial review challenging the Commissioner's determination that she is not disabled.

## Standard of Review

Under § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). If substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 1422 (1971); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. It is more than a mere scintilla and less than a preponderance. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). In applying the substantial evidence standard the court must review the entire record as whole, but may not reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Newton v. Apfel*, 209 F.3d 448, 452 (5th

Cir. 2000). Conflicts in the evidence are for the Commissioner and not the court to resolve. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

If the Commissioner fails to apply the correct legal standards, or provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981); *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981); *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

The claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. § 404.1505. The regulations require the ALJ to apply a five step sequential evaluation to each claim for benefits. 20 C.F.R. § 404.1520. The five step sequence requires the ALJ to determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in Appendix 1 of the regulations;[3] (4) the

---

[3] Listed impairments are descriptions of various physical and mental illnesses and abnormalities generally characterized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results. For a claimant to show that his impairment matches a listed impairment he must demonstrate that it meets all of the
(continued...)

impairment(s) prevents the claimant from performing past relevant work; and, (5) the impairment(s) prevents the claimant from doing any other work.  *Masterson*, 309 F.3d at 271.

The burden of proving disability rests on the claimant through the first four steps.  At the fourth step the Commissioner analyzes whether the claimant can do any of his past relevant work.  If the claimant shows at step four that he or she is no longer capable of performing past relevant work, the burden shifts to the Commissioner to show that the claimant is able to engage in some type of alternative work that exists in the national economy.  *Myers*, supra.  If the Commissioner meets this burden the claimant must then show that he or she cannot in fact perform that work.  *Boyd*, 239 F.3d at 705.

**Analysis**

The ALJ made the following relevant findings which the plaintiff does not contest: (1) at the second step the plaintiff had severe impairments of hypertension, degenerative disc disease, hypothyroidism and obesity; and, (2) at the third step the plaintiff's impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpt. P, Appendix 1.  AR pp. 13, 16.

---

[3](...continued)
medical criteria specified in the listing.  An impairment that exhibits only some of the criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 529-32, 110 S.Ct. 885, 891-92 (1990); 20 C.F.R. §§ 404.1525.

However, the plaintiff contends that the following errors require reversal and remand for a correct evaluation of her claim: (1) the ALJ rejected restrictions assessed by the plaintiff's treating family practice physician, Dr. Elizabeth Curtis, without good cause, without articulating good reasons, and in violation of Social Security Rulings ("SSR") 96-2p and 96-6p; (2) the ALJ's RFC finding was not supported by substantial evidence; and (3) the ALJ's finding that the plaintiff can resume her past relevant work is also not supported by substantial evidence.

**1. The ALJ's decision complies with the legal standards for disability determinations, as established by the Social Security Act and regulations and relevant case law.**

Plaintiff's claim that the ALJ improperly considered and weighed the opinions of Dr. Curtis is not supported by the record.

Although the opinion and diagnosis of a treating physician should generally be given considerable weight in determining disability, it is well established that a treating physician's opinions are not conclusive and may be assigned little or no weight when good cause is shown. The ALJ may discount the weight of a treating doctor's medical opinion when it is conclusory, unsupported by medically acceptable clinical, laboratory or diagnostic techniques, or is otherwise unsupported by the evidence. *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000). An ALJ is free to reject the medical opinion of any physician when the evidence supports a contrary conclusion. *Bradley v. Bowen*, 809

F.2d 1054, 1057 (5th Cir. 1981).

The regulations also state that when the ALJ finds the medical opinion is not entitled to controlling weight, certain factors should be considered in deciding how much weight to give the opinion. These factors include the length of treatment, the consistency of the opinion with the record as a whole, and the treating physician's specialization. 20 C.F.R. § 404.1527© and (d); SSR 96-2p;[4] *Newton*, 209 F.3d at 456. Nevertheless, the ALJ need not consider each of the factors where there is competing first-hand medical evidence and the ALJ finds that one doctor's opinion is more well-founded than another. *Id.*; *Walker v. Barnhart*, 158 Fed.Appx. 534 (5th Cir. 2005).

A medical sources's opinions on some issues are not medical opinions, but are instead "opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e. that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(d). Thus, a treating source's statement or opinion that the claimant is "disabled" or "unable to work," is not a medical opinion, but a legal conclusion on an issue reserved to the Commissioner. The factors set out in the regulations apply only to medical opinions, not opinions reserved to the Commissioner. 20 C.F.R. §

---

[4] TITLES II AND XVI: GIVING CONTROLLING WEIGHT TO TREATING SOURCE MEDICAL OPINIONS, 1996 WL 374188.

404.1527(d)(1)-(3); *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

Applying these legal principles to the ALJ's decision demonstrates that she did not commit reversible error. Plaintiff's argument that the ALJ rejected the opinions and restrictions assessed by Dr. Curtis without good cause or giving adequate reasons is not supported by the regulations and the case law. Dr. Curtis's statement in her May 26, 2010 letter, that the plaintiff could not sustain work at any level,[5] is a statement on an issue reserved to the Commissioner, and as such the ALJ was not required to assess it using all of the factors listed in the regulations. Even if the May 26 letter is viewed as a medical opinion, because there was competing first-hand medical evidence from an examining physician - Dr. Douglas Davidson - the ALJ was not required to consider each of the *Newton* factors. Furthermore, there was good cause and substantial evidence to support the ALJ's decision not to give controlling weight or deference to Dr. Curtis's statements. AR p. 18. Dr. Curtis's opinions were conclusory and not supported by some of her own treatment records, or the other medical evidence contained in the record.

For example, in June 2008 the plaintiff saw Dr. Curtis and reported pain radiating down her legs, which she experienced after clearing out closets. Plaintiff reported numbness and weakness,

---

[5] AR p. 387.

and a pain level of ten on a scale of one to ten.  However, Dr. Curtis's findings showed only a decreased range of motion of the back and positive straight leg raises on the right.  Dr. Curtis noted that the plaintiff was doing well overall, walked easily into the room, had no edema and no apparent motor deficits.  AR pp. 219-20.  On November 24, 2008 the plaintiff went to see Dr. Curtis for a follow-up visit after going to the hospital for pneumonia and a urinary tract infection.  Dr. Curtis did not indicate any other complaints at that time.  In the musculoskeletal area the doctor checked that the exam was within normal limits, and stated that the plaintiff could return to work on November 26.  AR p. 217.  When the plaintiff went for her annual exam on February 4, 2009, Dr. Curtis noted that the plaintiff had no edema and was in no acute distress.  AR p. 215.  In July and September 2009, approximately ten months before Dr. Curtis's May 26, 2010 letter, the plaintiff went to see Dr. Curtis for hypertension and upper respiratory problems.  Dr. Curtis generally reported in her treatment records that the plaintiff appeared healthy and looked well, had a normal gait, no musculoskeletal pain, was alert and cooperative, and did not appear depressed or anxious.  AR pp. 286-97.  The record did not contain any treatment notes from Dr. Curtis for the period September 2009 until the doctor's letter of May 26, 2010.

The record also contains evidence of treatment by cardiologist Dr. John S. McClelland, II, and Dr. Rajat Bhushan of the Metabolic

Center. In November and December 2007 the plaintiff had a normal stress test and chest x-ray. AR pp. 360-65. Treatment records from Dr. McClelland for October through December 2009 showed that his change in her blood pressure medication resulted in her blood pressure being very well-controlled. He reported no drug side effects, and noted several times that he recommended the plaintiff start an exercise program. AR p. 320. In his physical examinations Dr. McClelland observed normal muscle strength and tone, no motor or sensory deficits, and no edema. AR pp. 320-31. The record also showed treatment by Dr. Bhushan at the Metabolic Center from February 2008 to December of 2009. AR pp. 189-214, 374-84. Like Dr. McClelland, Dr. Bhushan advised the plaintiff to perform regular exercise. Neither Dr. Bhushan nor Dr. McClelland ever placed any restrictions on the plaintiff's level of physical activity.

Finally, Dr. Davidson performed a consultative examination on August 18, 2009. AR pp. 278-81. Plaintiff's chief complaint at that time was back injury and pain, high blood pressure and depression. Dr. Davidson reviewed the plaintiff's medical history, performed a physical examination, and reported the following relevant findings: (1) no complaints of chest pain or chronic cough; (2) no edema, no swelling in the joints or extremities, or pain in thighs/calves when walking; (3) no enlarged thyroid; (4) normal range of motion of all joints except for thoracolumbar

spine; (5) knees were stable and Patrick's and straight leg tests negative; and, (6) normal grip strength with no problems walking, dressing and undressing, sitting, standing or lying down. AR pp. 279-80. In his functional assessment of the plaintiff's exertional and nonexertional abilities, the only limitation Dr. Davidson placed on the plaintiff was limiting her to lift/carry or push/pull 10-20 pounds intermittently. AR p. 281.

In summary, it is apparent from the cases and evidence cited above that the ALJ had good cause not to credit or defer to Dr. Curtis's conclusory statements that she believed the plaintiff could not sustain work at any level. AR p. 387.

Plaintiff also claimed that in weighing the evidence the ALJ violated SSR 96-6p,[6] which addresses agency policy regarding the Appeals Council and ALJ's consideration and evaluation of the opinions of state agency medical consultants. Plaintiff argued that the ALJ violated SSR 96-6p because Dr. Fred Ruiz, the state agency physician upon which the ALJ relied, made his findings on August 24, 2009. AR pp. 264-73. Therefore, he did not review Dr. Curtis's September 2009 treatment records or May 26, 2010 letter.

This claim of legal error is also unsupported. Social Security Rulings represent precedent final opinions and orders and

---

[6] TITLES II AND XVI: CONSIDERATION OF ADMINISTRATIVE FINDINGS OF FACT BY STATE AGENCY MEDICAL AND PSYCHOLOGICAL CONSULTANTS AND OTHER PROGRAM PHYSICIANS AND PSYCHOLOGISTS AT THE ADMINISTRATIVE LAW JUDGE AND APPEALS COUNCIL LEVELS OF ADMINISTRATIVE REVIEW, 1996 WL 374180, *2-3.

statements of policy and interpretations that have been adopted by the Social Security Administration.[7]  Social Security Ruling 96-6p states in relevant part:

> In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources. For example, the opinion of a State agency medical or psychological consultant or other program physician or psychologist may be entitled to greater weight than a treating source s medical opinion if the State agency medical or psychological consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source.

This portion of SSR 96-6p relied on by the plaintiff does not support the plaintiff's argument.  The ruling merely states that the state agency medical consultant's opinion may be entitled to greater weight than a treating source's medical opinion, if the consultant's opinion "is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source."  Contrary to the plaintiff's argument, SSR 96-6p does not require that the state agency medical consultant must have reviewed every record and statement of the treating physician for the ALJ to give more weight to the

---

[7] 20 C.F.R. § 402.35(b); *Spellman v. Shalala*, 1 F.3d 357, 361, n.7 (5th Cir. 1993).

consultant's opinion.  Moreover, as previously explained, Dr. Curtis's statement in May 2010 that the plaintiff could not perform sustained work at any level, is not a "medical opinion" within the meaning of the regulations.

It is the role of the ALJ as fact finder to consider and weigh the evidence.[8]  Based on the analysis above, the ALJ weighed the evidence in compliance with the relevant legal standards, including SSR 96-2p and 96-6p, and her findings were supported by substantial evidence.  Plaintiff's claim that the ALJ did not apply the proper legal standards in considering and weighing the evidence are without merit.

**2. The ALJ's RFC finding, as well as the finding that the plaintiff can perform her past relevant work is supported by substantial evidence.**

Plaintiff essentially argued that the ALJ's RFC finding, and the ultimate finding at the fourth step that she is not disabled, are not supported by substantial evidence.  Plaintiff premised her argument on the following: (1) the ALJ both informed the vocational expert[9] and made a finding that the plaintiff had an RFC for light

---

[8] It is not the court's job to weigh the evidence; that task is for the ALJ.  *See*, *Greenspan v. Shalala*, 38 F.3d 232, 240 (5th Cir. 1994).

[9] Vocational expert Thomas Mungall provided testimony at the ALJ hearing.  AR.  49-52.

14

work,[10] which means the plaintiff had the ability to lift and carry ten pounds frequently and twenty pounds occasionally; (2) this is inconsistent with Dr. Davidson's opinion that the plaintiff was only able to lift/carry or push/pull ten to twenty pounds "intermittently," because "occasionally" under the regulations means the ability to repeatedly lift/carry the weight for one-third of an eight hour day; and (3) because there is no basis in the regulations to conclude that "intermittently" means the same thing as "occasionally," the ALJ's failure to inform Mungall of Dr. Davidson's lifting/carrying limitation means that neither the RFC finding nor the finding that the plaintiff can resume her past relevant work is supported by substantial evidence.

Plaintiff's arguments are legally and factually unsupported. Plaintiff's argument might have some force if "occasionally" was defined in the regulations as stated by the plaintiff - the ability

---

[10] 20 C.F.R. §404.1567(b). Light work is defined in the regulations as follows:
> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

15

to repeatedly lift/carry for a third of the day.[11]  However, the Social Security Ruling that defines "occasionally" does not use the term "repetitively."  It merely states that "occasionally" means occurring from very little up to one-third of the total time performing that activity (i.e., lifting, carrying, sitting, standing, walking) during an eight hour workday.[12]  Plaintiff also did not cite any authority to support the argument that an individual who can only perform a work activity "intermittently" cannot satisfy the agency's definition of "occasionally."[13]

Moreover, the ALJ was not required to base the RFC finding, or the question to the vocational expert, on the opinions of Dr. Davidson.  It is apparent from the ALJ's decision that she considered and weighed all the medical and other evidence, including the reports of Dr. Davidson, Dr. Curtis, and Dr. Ruiz, the state agency medical consultant,[14] and found that the plaintiff

---

[11] Record document number 10, Plaintiff's Memorandum in Support of Appeal, p. 7.

[12] SSR 83-10, TITLES II AND XVI: DETERMINING CAPABILITY TO DO OTHER WORK-THE MEDICAL-VOCATIONAL RULES OF APPENDIX 2, 1983 WL 31251, *5; AR pp. 265, 267 (Dr. Ruiz Physical Residual Functional Capacity Assessment).

[13] Logically, the ability to do a work activity intermittently would not preclude the ability to do the activity for a total time of up to one-third of an eight hour workday.

[14] AR pp. 264-73.

had an RFC for a full range of light work.[15]  AR pp. 17-18. Substantial evidence from the reports of Drs. Davidson and Ruiz clearly support this RFC finding.[16]  Therefore, the expert's opinion, that with this RFC the plaintiff could perform her past relevant work, constituted substantial evidence that the plaintiff was not disabled.[17]

## Conclusion

Plaintiff's arguments and the administrative record have been carefully considered.  Review of the administrative record as a whole and the analysis above demonstrates that (1) the claims of reversible error raised by the plaintiff are without merit, and (2)

---

[15] Plaintiff's hearing testimony is also consistent with this finding.  Plaintiff testified at the ALJ hearing that the most weight she had to lift as a manager was about 20 pounds.  Plaintiff also testified that she was terminated from her job in December 2008 because of her inability to concentrate and get her paper work done timely.  Plaintiff did not state that pain or other effects of her physical impairments prevented her from performing her job duties.  AR pp. 31-34.

[16] In her written decision the ALJ stated that she gave great weight to the opinions of Dr. Davidson and Dr. Ruiz.  AR p. 18. Again, this is the role of the ALJ as fact finder - to weigh the evidence, resolve conflicts in the evidence, and draw reasonable inferences from the evidence.  *Greenspan, supra; Short v. Astrue*, 2013 WL 655020 (N.D. Tex. Feb. 5, 2013).

[17] Under § 404.1560(b)(2) and the case law it is well-established that the determination of whether a claimant can do his or her past relevant work may rest on descriptions of past work as actually performed or as generally performed in the national economy.  *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990); *Khawaja v. Shalala*, 20 F.3d 1170 (5th Cir. 1994); *Cooper v. Barnhart*, 55 Fed. Appx. 716 (5th Cir. 2002); *Alexander v. Astrue*, 412 Fed.Appx. 719 (5th Cir. 2011).

substantial evidence supports the final decision of the Commissioner that the plaintiff is not disabled.

## RECOMMENDATION

It is the recommendation of the magistrate judge that under sentence four of 42 U.S.C. § 405(g), the final decision of Commissioner of Social Security Michael J. Astrue denying the application of plaintiff Celia Weinberg Asberry for disability insurance benefits be affirmed, and that this action be dismissed.

Baton Rouge, Louisiana, June 3, 2013.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE